UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRACIE T., <br><br> Plaintiff, <br><br> v. <br><br> ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:24-cv-01544-TLF <br><br> ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff filed this action under to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to the jurisdiction of a Magistrate Judge. Dkt. 2. Plaintiff challenges the Administrative Law Judge's ("ALJ") decision finding that plaintiff was not disabled. Dkt. 4, Complaint.

On February 8, 2018, plaintiff filed an application for SSI and DIB alleging a disability onset date of December 6, 2015. AR 456-66, 467-68. The application was denied initially (AR 158, 159) and upon reconsideration (AR 191, 192). An administrative hearing was scheduled for July 16, 2019, but was continued to give plaintiff the opportunity to find a representative. AR 42-61.

On November 12, 2019, a hearing was conducted by ALJ Glenn Meyers; plaintiff was unrepresented by counsel at the hearing. AR 62-102. On November 27, 2019, ALJ

Meyers issued his decision finding plaintiff did not meet the criteria for disability benefits. AR 225-49. The Appeals Council ("AC") overturned the unfavorable decision and remanded the case to the ALJ for further administrative proceedings. AR 245-49. On December 9, 2021, ALJ Meyers conducted a second hearing, and plaintiff was represented by counsel. AR 120-57. Plaintiff amended her alleged date of onset to November 16, 2016, and thus withdrew her application for DIB because she would not have disability insured status on the date of onset. *See* AR 1936.

On December 23, 2021, ALJ Meyers issued a second decision finding plaintiff did not meet the criteria for disability benefits. AR 1933-58. The AC adopted the ALJ's decision. 1959-68. Plaintiff appealed to this Court and on May 23, 2023, the Honorable S. Kate Vaughan issued a decision reversing and remanding for further administrative proceedings and instructing the ALJ to reconsider the opinions of Dr. Knapp and Dr. Petaja. AR 1971-78.

On April 30, 2024, ALJ Howard Prinsloo conducted another hearing. AR 1915-32. On June 10, 2024, ALJ Prinsloo decided plaintiff did not meet the criteria for disability benefits. AR 1886-1914. The ALJ found plaintiff had the following severe impairments: degenerative disc disease, obstructive sleep apnea, obesity, depressive disorder, anxiety disorder, PTSD, and substance abuse in remission. AR 1892.

The ALJ determined plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following additional limitations:

> The claimant can occasionally balance, crawl. And climb ramps and stairs; cannot climb ladders, ropes, or scaffolds; cannot be exposed to workplace hazards including work at unprotected heights or around dangerous or moving

machinery; and is limited to only simple routine tasks with no public contact and only occasional interaction with coworkers.

AR. 1894. The ALJ found plaintiff could perform the requirements of representative occupations such as electronics worker (DOT #726.687-010), with an estimated 169,000 jobs nationally; marker (DOT #209.587-034), with an estimated 84,000 jobs nationally; and small products assembler II (DOT #739.687-030), with an estimated 165,000 jobs nationally. AR 1904.

STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

DISCUSSION

1. **Medical evidence.**

Plaintiff challenges the ALJ's assessment of the opinions of the opinions of Dr. Geordie Knapp, Psy.D., Holly Petaja, Ph.D., and Phyllis Ying, M.D. Dkt. 8 at 3-9. For the

3

reasons discussed below, the ALJ's decision is reversed because the ALJ's decision rejecting the opinions as non-persuasive is not supported by legally sufficient reasons, and the decision is unsupported by substantial evidence.

Plaintiff filed the claim on February 8, 2018, so the ALJ applied the 2017 regulations. *See* AR 456-66, 467-68. Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must explain with specificity how they considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). The Court found that "the requirement that ALJ's provide 'specific and legitimate reasons'[1] for rejecting a treating or examining doctor's opinion…is incompatible with the revised regulations" because requiring ALJ's to give a "more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources." *Id.* at 792. Under the new regulations,

> an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

*Id.*

---

[1] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate reasons").

4

On November 16, 2016, Dr. Knapp examined plaintiff and completed a psychological/ psychiatric evaluation. AR 611-15. Dr. Knapp opined that the following symptoms impact plaintiff's ability to work: reexperiencing, avoidance, increased arousal, depressed mood, anhedonia, drug and alcohol abuse. AR 612. Dr. Knapp diagnosed PTSD, major depressive disorder, severe, alcohol use disorder, severe, in a controlled environment. *Id*.

Dr. Knapp opined marked limitations in the following basic work activities: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; complete a normal workday and work week without interruptions from psychologically based symptoms. AR 613. Dr. Knapp opined moderate or mild limitations in all other basic work activities. *Id*. An overall severity rating was found to be "marked". *Id*. Dr. Knapp conducted a mental status examination and noted that her speech was slow, low in volume and limited work production, her mood was depressed and anxious, and her affect was flat. AR 614. Plaintiff described ongoing suicidal ideation, her recent and remote memory were at times vague and indistinct, she did not know the current governor, she could repeat five digits forward but only three digits backward. *Id*.

On November 8, 2017, Dr. Knapp again examined plaintiff and completed a second psychological/ psychiatric evaluation. AR 617-620. The marked limitations were the same as in the first evaluation. AR 617-618. On November 17, 2017, Dr. Petaja reviewed Dr. Knapp's evaluations and assessed the same limitations as Dr. Knapp. AR 622-24.

The ALJ found Dr. Knapp's opinions to be persuasive as to the moderate limitations found but unpersuasive concerning limitations of greater than moderate severity because the findings were not consistent with the overall medical record including subsequent psychological evaluations which often demonstrated normal findings. AR 1899. Specifically, the ALJ found the marked limitations to be inconsistent with psychological evaluations performed by Ms. Gaebler and Dr. Mashburn, as well as mental status examinations performed by plaintiff's treating mental health providers. *Id*. The ALJ also discounted the limitations of greater than moderate severity opined by Dr. Petaja for the same reasons. *Id*.

The consistency factor considers the extent to which a medical opinion is "consistent...with the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520(c)(2). An opinion's inconsistency with the medical record may be a valid basis on which to not credit that opinion. *See Woods v. Kijakazi*, 32 F.4th 785, 792-93 (9th Cir. 2022). Yet the ALJ's duty to set forth their reasoning "in a way that allows for meaningful review," *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

Earlier in the opinion, the ALJ cited mental status examinations where plaintiff "was noted to be pleasant, cooperative, alert and fully oriented, and to demonstrate normal findings concerning appearance, speech and language, psychomotor behavior, eye contact, thought process and content, cognition including memory, attention, and concentration, fund of knowledge, and judgment and insight, with little evidence of suicidal or homicidal ideation." AR 1898 (citing AR 647, 651, 724-25, 727-28, 730-31,

733-34, 736-37, 739-40, 744, 746, 957-58, 981-82, 1193-94, 1215, 1460, 1467, 1511, 1697-98, 1749, 1762, 2400, 2419-20, 2438, 2569-70, 2688, 2725-26, 2734-35, 2742, 3147, 3182).

But the ALJ did not give any reasoning for how these normal exam findings are inconsistent with the marked limitations in basic work activities opined by Drs. Knapp and Petaja including: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; complete a normal workday and work week without interruptions from psychologically based symptoms. *See* AR 613.

Further, although there were many instances of normal mental status exams, there were also many instances where plaintiff's mental status exams showed abnormal findings. Her mood was often noted to be anxious, dysphoric, or depressed, her general condition was often noted as "doing poorly," and her sleep was often disturbed. *See, e.g.*, AR 724, 730, 733, 736-37, 755-56, 763-64, 981, 1876, 2704, 2719. In mental status examinations, often she was found to be not suicidal, yet she discussed fleeting thoughts of suicide. *See* AR 746, 766-67, 1481, 1673, 1765, 2463, 2466, 2492, 2500-01. And, on two occasions she presented to the emergency department with suicidal ideation. AR 1841-53, 3124-3220. Even when her mood was not noted to be depressed, she stated to providers that her mood was low, leaving her feeling numb, and her anxiety was high. *See, e.g.*, AR 750.

The ALJ thus did not provide sufficient reasons for discounting the limitations of greater than moderate severity opined by Dr. Knapp and Dr. Petaja.

On April 12, 2024, plaintiff's primary care physician, Dr. Ying, completed a medical source statement. 3283 -93. Dr. Ying opined that once a week plaintiff would be absent from work because of interruptions from psychologically based symptoms. AR 3285. Dr. Ying also opined that plaintiff exhibited problems with her ability to concentrate or complete tasks that would prevent her from carrying out both simple and detailed instructions and these problems would prevent her from staying on task for the two-hour segments between breaks during a workday more than once a week and these lapses would last more than 20 percent of the day. AR 3283-84. She opined that plaintiff performs activities at an abnormally slow pace. AR 3284.

She wrote that plaintiff experiences emotional dysregulation leading to panic attacks and fraught interactions. AR 3285. She wrote that plaintiff would struggle with anything that required concentration for more than two hours and that plaintiff is somnolent at various times throughout the day. AR 3286.

Dr. Ying also opined that plaintiff cannot respond appropriately to criticism from supervisors. AR 3287. She opined that plaintiff would struggle to adapt to demands or stress of the workplace; her ability to function effectively would cease if she were required to work at a particular time five times a week and if she were required to perform simple repetitive tasks full-time five days a week. AR 3287.

The ALJ found Dr. Ying's opinion persuasive regarding plaintiff's memory, social interactive capabilities, and concentration concerning greater than simple work but unpersuasive concerning her capacity for adaptation and ability to concentrate for the performance of simple work. AR 1901. Specifically, the ALJ found that the opinion was not fully consistent with the medical evidence of record which demonstrated that

plaintiff's panic is able to be calmed when properly medicated and the evidence does not demonstrate impairment of her ability to perform simple work. AR 1901.

The ALJ did not refer to a specific portion of the record for evidence that plaintiff's panic attacks improved with medication but referred to plaintiff's testimony to that effect earlier in the opinion. *See* AR 1895.

During the hearing, plaintiff's attorney asked plaintiff whether she still finds anxiety to be limiting in light of the fact that she had a prescription to Xanax. AR 1925. Plaintiff replied that she is only prescribed 15 mg per month and so takes it sparingly when needed, 2 mg two to three times a week, and other days she avoids situations that cause her anxiety. AR 1925-26. She responded affirmatively when plaintiff's attorney clarified that "is it fair to say it's helping with this kind of full-blown panic attacks and not your underlying, kind of baseline anxiousness." AR 1926.

The record does not suggest that this treatment offered long term success. On February 9, 2022 during an office visit (AR 2476-2484) her primary care provider, Dr. Ying, noted "I do not recommend taking this [medication] long term and eventually we do need to think about the long term management plan for panic attacks without relying on this medication." AR 2478.  On May 26 and 31, and June 3, 2022, psychotherapy assessments by Dr. West note that plaintiff posed a moderate to high risk of self-harm and was behaving so erratically that an emergency room visit was warranted, while taking Xanax (Alprazolam) and after her prescription ran out. AR 2500-2506.

On September 14, 2022, a provider noted "[p]atient has tried multiple modalities for anxiety management including therapy, medication, and ketamine treatment." AR 2324. On January 4, 2023, it was noted that alprazolam helped with occasional panic

symptoms until she faced stressors in her personal life. AR 2365. This is not inconsistent with Dr. Ying's opinion that plaintiff would have significant problems in adapting to full-time work due to panic attacks and chronic fatigue. *See* AR 1901; *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]mproved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.").

The ALJ also stated, "the objective evidence does not demonstrate impairment of her ability to perform simple work." But the ALJ does not explain this conclusion, and as described above, the ALJ did not provide any reasoning for overlooking portions of the record that reflected more severe impairments.

The ALJ therefore did not provide sufficient reasons for discounting the limitations regarding adaptation and ability to concentrate for the performance of simple work opined by Dr. Ying.

- Harmless error

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless. *Id.* at 1052, 1054; *see also, Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-23 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

At the hearing the vocational expert ("VE") testified that an individual who missed two or more days of work per month would not be tolerated. AR 1931. He testified that a

10

person who was off task 20 percent per day twice a week would not be tolerated. AR 1931. Had the ALJ credited the marked limitations opined by Dr. Knapp and Dr. Petaja and the limitations regarding adaptation and ability to concentrate for the performance of simple work, and absence from the workplace four times per month, as opined by Dr. Ying, it may have resulted in a more restrictive RFC. Therefore, the errors in evaluating these opinions were not harmless.

### 2. Plaintiff's statements regarding subjective symptoms

Plaintiff challenges the ALJ's assessment of her subjective symptom testimony. Dkt. 8 at 9-16.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).  In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

At the hearing, plaintiff testified she experiences fatigue to the extent that she is basically bedridden, and her depression and anxiety symptoms can be very disabling. AR 1919. She testified that most days she spends many hours in bed watching TV, she'll get up to use the restroom or get water but even standing and doing dishes or the laundry is quite painful. AR 1920.

She testified that her conditions compound on one another. *Id*. She lives with her 16-year-old son who has autism. AR 1921. She testified that her son is independent and does the grocery shopping and prepares his own meals. *Id*. He is responsible for cleaning his own room and bathroom; plaintiff does the laundry and is supposed to do dishes, but it became so difficult thy switched to disposable dishes and silverware. AR 1922.

Plaintiff testified that she takes trintellix, trazadone, lyrica, and Xanax but the medications do not provide meaningful improvement. AR 1922-23. She tried ketamine therapy to treat her suicidal ideations which helped but she could not afford further treatment. AR 1923-24. She testified that Xanax helps with her panic attacks but not with her baseline anxiety. AR 1926. She testified that she cries several times a week due to her anxiety. AR 1927. She testified that she struggles with getting out of bed, showering, and getting dressed every day; showering is very tiring. AR 1927-28.

The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, her statements considering the intensity, persistence, and limiting effects of these symptoms was not entirely consistent with the medical evidence and other evidence in the record. AR 1895. Specifically, the ALJ cited plaintiff's activities such as acting as the full-time caretaker or her granddaughter, caring for her autistic son, attending a Seahawks game, and flying to Arizona, and noncompliance with her medication regime. AR 1902.

An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

As to caretaking, it does not appear that the ALJ considered context. For example, the ALJ cites an April 2018 medication management note stating "[s]he if [sic] now caring for her 3 yo granddaughter FT. Her daughter (the child's mother) is having difficulty and may be giving her up for adoption." AR 956. On May 16, 2018, she reported that her activities of daily living involved babysitting for her granddaughter including making breakfast and taking her to the park. AR 944. Yet there is no context as to the extent of these caretaking responsibilities. But the record contains a letter from plaintiff's daughter dated November 22, 2021, clarifying that plaintiff has never been her daughter's full-time caretaker and her daughter was always in full-time daycare. AR 584. She wrote that her plaintiff has never watched her daughter on a regular basis but has at times taken her to daycare. *Id*.

The record also does not support the conclusion that plaintiff's caretaking responsibilities regarding her son diverged from her testimony. The October 4, 2019, note (cited in the ALJ's decision) stated that plaintiff spends the bulk of her days supporting her son at home, though it also states that she often gets her son to school and then sleeps until he comes back. AR 1694. Plaintiff consistently expressed to care providers her challenges with raising her son due to her symptoms, and this is consistent with her testimony. *See* AR 1764, 1783, 2492.

As to the Seahawks game, the context reveals that although plaintiff attended the game, it caused such a severe flair in her symptoms that she went to the emergency room. AR 978. She reported that she was unable to get to her seat because of shortness of breath. AR 2340.

Regarding travel to Arizona, the only mention at a previous hearing was that plaintiff had just returned from Arizona by plane. AR 130. Plaintiff testified that prior to this trip she had not left the state of Washington for sixteen years. AR 133.

As to plaintiff's noncompliance with treatment, an inadequately explained failure to follow a prescribed treatment regimen can serve as a valid reason for discounting a claimant's testimony. *See* Social Security Ruling ("SSR") 16-3p (if an individual fails to follow a prescribed treatment that might improve symptoms, an ALJ may find that the alleged intensity of an individual's symptoms is inconsistent with the record). *See also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to...follow a prescribed course of treatment...can cast doubt on the sincerity of the claimant's pain testimony.").

Here, the ALJ cited evidence that plaintiff was not consistently attending physical therapy and was discharged (AR 1896 citing AR 611), she was not fully compliant with her medication regiment ( AR 1897 citing AR 7F at 740, 823, 958).

The portion of the record the ALJ cites to regarding plaintiff's noncompliance with physical therapy does not support this statement. *See* 1896 (citing 611). Elsewhere in the record it is noted that plaintiff was discharged from physical therapy after noncompliance, but it was also noted that she had received maximum benefit from therapy and was unable to fully participate in PT sessions due to other medical complications and her chronic pain; she was recommended to follow up with her MD regarding other treatment options. AR 2248.

Here, it neither appears that this treatment relieved plaintiff's symptoms nor that her noncompliance was necessarily the reason she was discharged. On the second

page it was noted that "[t]he patient has reached maximum benefit from therapy and has been discharged from therapy. The patient is no longer a candidate for skilled therapy." AR 2249.

At another point, she was discharged from an outpatient program because she was unable to attend regularly due to fatigue and exhaustion. AR 2491. Therefore, this is not substantial evidence.

The ALJ's decision cites a note stating: "no meds ordered today She will contact writer if she wishes to restart." AR 958. However, just before this, the provider notes plaintiff was doing well and preferred to be off medication for the time being. AR 956. Plaintiff reported being off Paxil for two weeks, and the provider noted this may be a contributor to low mood. AR 740. She reported she ran out of that medication. AR 738. In another note cited in the ALJ's decision, plaintiff is noted to be taking her medication but missing possibly one dose per week. AR 823. The isolated treatment notes cited by the ALJ are insufficient to establish a pattern of non-compliance. Even if a pattern could be inferred from the evidence cited, the ALJ has not considered other reasons why plaintiff might not have followed a prescribed course of treatment. *See* SSR 16-3p

Although the ALJ cited inconsistency with the treatment record, this, on its own is not a sufficient reason for discounting plaintiff's testimony. An ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Additionally, the Court has already determined that the ALJ erred in summarizing the treatment record. Treatment records cannot be

cherry-picked; the ALJ must consider a particular record of treatment considering the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.

Accordingly, the ALJ failed to provide specific, cogent reasons for discounting plaintiff's testimony.

- Harmless error

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless. *Id.* at 1052, 1054*; see also, Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-23 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

Here plaintiff described significant limitations based on her impairments that leave her all but bedridden. Had the ALJ considered this testimony it may have resulted in a more restrictive RFC. Therefore, the ALJ's errors in evaluating her testimony were not harmless.

3. **Whether the Court should reverse with a direction to award benefits.**

Plaintiff requests that the Court remand for an immediate award of benefits. Dkt. 8 at 16-18.

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should

remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks the Court to remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's subjective testimony. The Court has found reversible errors in the ALJ's evaluation of plaintiff's statements about symptoms and limitations and the medical opinion evidence, several of which repeated errors of the prior ALJ in the Commissioner's previous decision. Plaintiff first applied for benefits in 2018 and this case has been remanded twice, first by the AC, and then by this Court.

There is no ambiguity in the record. If the opinions of Drs. Knapp, Petaja, and Ying are credited as true, the ALJ would be required to find plaintiff disabled on remand.

17

AR 611-15, 622-24, 3283-93; see *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits.").

Accordingly, remand for an award of benefits is the appropriate remedy.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for an immediate award of benefits.

Dated this 23rd day of May, 2025

Theresa L. Fricke
United States Magistrate Judge